UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BROADVOICE, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>BELLSOUTH CORP., BELLSOUTH )<br>TELECOMMUNICATIONS, INC., )<br>and )<br>BELLSOUTH INTELLECTUAL )<br>PROPERTY CORP. )<br><br>Defendants. ) | Civil Action No. 05-11435-NG |

## LIMITED OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE A REPLY

Plaintiff BroadVoice, Inc. ("BroadVoice"), by its undersigned counsel, respectfully submits this opposition to Defendants' Motion for Leave to File a Reply Memorandum in Support of Their Motion to Dismiss, or Transfer, or Stay.

BroadVoice opposes Defendants' motion on the grounds that there are a number of inaccurate contentions of fact and law set forth in Defendants' Reply Memorandum. In order to correct the inaccurate contentions identified in Defendants' Reply, BroadVoice has prepared and submits herewith a Motion for Leave to File a Surreply Memorandum. (A copy of BroadVoice's Surreply Memorandum is attached hereto as Exhibit A.)

Therefore, BroadVoice's opposition to Defendants' Motion for Leave to File a Reply is limited in that BroadVoice only opposes Defendants' Motion if the Court denies BroadVoice's Motion for Leave to File a Surreply.

        Respectfully submitted,

        BroadVoice, Inc.

        By its attorneys

DATE: December 2, 2005

/s/ Robert N. Feldman
BIRNBAUM & GODKIN, LLP
Robert N. Feldman (BBO # 630734)
280 Summer Street
Boston, MA 02210
Tel: 617-307-6100
Fax: 617-307-6101

BOSTON LAW GROUP, LLP
Sean C. Ploen (BBO # 641279)
20 Park Plaza, Suite 637
Boston, Massachusetts 02116
(617) 426-6800

## CERTIFICATE OF SERVICE

I, Robert N. Feldman, hereby certify that a true and correct copy of the foregoing document was delivered to all counsel of record on December 2, 2005, by electronic means.

/s/ Robert N. Feldman
Robert N. Feldman

**EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BROADVOICE, INC, <br><br> Plaintiff, <br><br> v. <br><br> BELLSOUTH CORP., BELLSOUTH TELECOMMUNICATIONS, INC., and BELLSOUTH INTELLECTUAL PROPERTY CORP. <br><br> Defendants. | Civil Action No. 05-11435-NG |

**PLAINTIFF'S SURREPLY MEMORANDUM IN OPPOSITION OF DEFENDANTS' MOTION TO DISMISS, OR TRANSFER, OR STAY**

Plaintiff, BroadVoice, Inc. ("BroadVoice"), respectfully submits this short surreply in further opposition to the Defendants' Motion to Dismiss, or Transfer, or Stay for the limited purpose of addressing the new arguments raised by the Defendants in their Reply filed with the Court on November 18, 2005.

I.    **Defendant BellSouth Corporation**

Defendants' Reply is full of distortions intended to distance BellSouth Corporation ("BSC") from its substantial direct and indirect Massachusetts business activities. BSC argues that its Massachusetts contacts are insufficient, and its Reply focuses on three contentions: (1) BSC does not sell telephone equipment in Massachusetts or provide services on RealPages.com; (2) the Massachusetts contacts of BSC's wholly-owned subsidiaries, BellSouth Telecommunications, Inc. ("BST") and BellSouth Intellectual Property Corp. ("BIPCO"), cannot be imputed to BSC; and (3) the Massachusetts agreements with

BroadVoice which were signed by BSC's Chief Technology Officer, William Smith, were superseded by a subsequent Trial Agreement between BroadVoice and BST. As discussed below, BSC's factual assertions are undermined by its own Web site, sales materials, and other public disclosures, and its legal position runs counter to the law of this Circuit.

First, BSC claims that its "does not offer for sale or sell telephone equipment" in Massachusetts. BSC's strident denial is belied by information readily available on BSC's Web site, <www.bellsouth.com>. Specifically, the "phones and accessories" page on BSC's Web site states that "BellSouth offers quality phones and accessories that make the perfect holiday gift."[1] Additionally, the "Site Map" page indicates that "products and services" are available for purchase by residents, small businesses, and BellSouth businesses.[2] These direct and explicit phone and accessory sales offers, which are accessible to any Massachusetts resident, are hard to reconcile with BSC's contention that it is directing no sales activity into Massachusetts.[3]

In an apparent effort to distance BSC from these offers on the BSC Web site, the Reply claims that the phones and accessories "are not manufactured by any BellSouth entity." See Defendants' Reply at 3. While this may be true, the ultimate manufacturer of equipment sold by BSC on BSC's Web site should have no bearing on this Court's personal jurisdiction analysis. Rather, the important fact for personal jurisdiction analysis is simply that BSC is directing sales activity into Massachusetts through its Web site -- a fact that BSC cannot in good faith deny.[4]

---

[1] See Supp. Ploen Aff., ¶ 4.
[2] See Supp. Ploen Aff., ¶ 5.
[3] Curiously, BSC does admit to one Internet sale in Massachusetts. See Peed Aff., ¶ 3.
[4] Moreover, at least with respect to telephone equipment for businesses, Massachusetts residents can order such equipment directly from BSC's Web site. See, e.g., <https://63.111.22.159/b2c/process/Category.pasp>; see also Ploen Aff., ¶ 5.

2

Additionally, BSC fails to respond to the fact that BellSouth equipment is on display and offered for sale (and sold) to customers on the shelves of at least one prominent Massachusetts retailer. See Ploen Aff., ¶ 3. The telephone equipment – sold directly to Massachusetts consumers at a Massachusetts retail establishment -- also includes an Owner's Manual and "Quick Start" guide. Id. The covers of both the Owner's Manual and Quick Start guide prominently identify the product as being from "BellSouth," and include notices stating "© 2005 BellSouth Corporation" and "© 2004 BellSouth Corporation" respectively. Id.

The Defendants also emphatically deny providing the services offered at <www.realpages.com>. Again, this denial is at direct odds with BSC's own press releases. BSC press releases, available on BSC's Web site, state under the heading "About BellSouth Corporation":

> BellSouth also offers online and directory advertising through BellSouth® RealPages.com® and The Real Yellow Pages.

See Supp. Ploen Aff., ¶ 6. In sum, as to each of BSC's denials found in the Reply, they are either false or based on some semantical or nuanced argument Defendants have failed to explain.

Second, BSC again attempts to distance itself from its other Massachusetts entanglements by arguing that its 40% ownership interest in Cingular Wireless, a cellular phone company with extensive Massachusetts operations, is insufficient to confer personal jurisdiction over BSC. BSC has missed the point: BroadVoice does not argue that BSC's 40% interest in Cingular is, by itself, sufficient to confer personal jurisdiction over BSC here; instead, BSC's interest was mentioned only as one of the many ways BSC derives revenue from Massachusetts business activity. Specifically, as set forth in more detail in BroadVoice's

3

Opposition to Defendants' Motion to Dismiss, in addition to the direct sales activity referenced above, BSC conducts regular and substantial business in Massachusetts through many of its various wholly-owned subsidiaries, particularly BST, which accounts for the vast majority of BSC's operating revenue.

BSC cannot -- and does not -- deny, for example, that BST is merely an agent designed to generate revenue for BSC. According to BSC's public filings, it does not report any operating revenue from its own business activity. Its revenue is instead generated through its numerous subsidiaries. Of BSC's $5.142 billion reported operating revenues for the three months ending June 30, 2005, BST produced $4.212 billion.[5]

Defendants half-heartedly attempt to provide evidence of institutional independence between BSC, BST and BIPCO by claiming that, "BST and BellSouth Corporation have no common directors and no common officers." See Defs' Reply at 4. This contention is, again, undermined by BSC's own public assertions. As stated in BroadVoice's initial Opposition, BSC and BST apparently have several key senior executive officers in common. The BellSouth "Management Team" Web site, <bellsouthcorp.com/team>, which jointly lists officers of both BSC and BST, does not list a separate Chief Technology Officer, Chief Financial Officer, or Chief Information Officer for BST, and William Smith, who is named as BSC's Chief Technology Officer, was identified in the BroadVoice Letter and Master Agreements as having the additional, dual title of Chief Technology Officer of BST. See Supp. Ploen Aff., ¶ 7. Moreover, Defendants do not deny that BSC's CEO, for example, exercises oversight of BST's operations.

---

[5] See BellSouth Corporation, Form 10-Q, filed August 3, 2005, "Notes to Consolidated Financial Statements – Note M."

4

As a matter of law, on these facts, this case epitomizes the rule laid out by In re Lernout, where this Court held that when a subsidiary is merely an agent of the parent corporation, that subsidiary's contact with the forum state will be imputed to the parent. See In re Lernout & Housfie Securities Litigation, 337 F. Supp. 2d 298 (D. Mass. 2004). In holding that the subsidiary was an agent of the parent company and imputing the subsidiary's forum-based contacts to the parent, among the factors this Court specifically relied on were that both companies shared common officers and that the subsidiary was created to carry on the business of the parent company.

Third, BSC apparently argues that since the Letter and Master Agreements, both signed by William Smith (BSC's and BST's CTO), were superseded by the Trial Agreement, the two agreements are not to be considered contacts for the purposes of the personal jurisdiction analysis. BSC cites no authority -- because no such authority exists -- for the proposition that a subsequent contact (by a party's wholly-owned subsidiary) negates prior forum state contacts of the parent company.

## II.    **BST and BIPCO**

In their Reply, Defendants argue that the exercise of jurisdiction over BST and BIPCO is also inappropriate. The main thrust of Defendants' argument is that this Court should not follow the general rule of conferring personal jurisdiction over BST and BIPCO as a result of their sending threatening letters into Massachusetts because the letters allegedly were solicited by BroadVoice. See Defs' Reply at 5.

Once again, Defendants have the facts wrong. There is no dispute that Kelli Beck of BST communicated first with BroadVoice concerning BroadVoice's alleged misuse of BellSouth's trademark -- an e-mail sent to David Epstein of BroadVoice on September 23,

5

2004. Only <u>after</u> that threatening communication did BroadVoice respond. Moreover, internal emails from BST and BIPCO reveal that the communications by Defendants into Massachusetts were part of a planned enforcement strategy by <u>both</u> BIPCO and BST. See Berry Aff., ¶ 21 (BST/BIPCO email noting that if BST "cannot get [BroadVoice] to comply, [BIPCO] will then step in and send a cease and desist letter").

Even if the Defendants' multiple e-mail and letter communications directed into Massachusetts were triggered by a BroadVoice solicitation (which, as noted above, is not the case), the law is clear both in Massachusetts and in the First Circuit that the initiation of contact by a Massachusetts resident, alone, does not negate the exercise of jurisdiction over a defendant. See <u>Hahn v. Vermont Law School</u>, 698 F.2d 48 (1st Cir. 1983) (affirming finding of personal jurisdiction over law school sending application and acceptance letters into Massachusetts, despite law school's objection that the Massachusetts resident solicited the communication by first requesting application from law school); <u>see also</u> <u>Carlson Corp. v. University of Vermont</u>, 380 Mass. 102 (1980) (plaintiff initiated contact with defendant through two telephone calls, follow-up letters, a hand delivery, and final proposal).

Defendants' Reply also tries to minimize the effect of BST's and BIPCO's other, broader business activity in Massachusetts. The Defendants try to argue that the facts before this Court are more akin to the facts presented to the Court in <u>Polaroid Corp. v. Feely</u>, 889 F. Supp. 21 (D. Mass. 1995) (Young, J), than the facts before the Court in <u>GSI Lumonics, Inc. v. BioDiscovery, Inc.</u>, 112 F. Supp. 2d 99 (D. Mass. 2000) (Young, C.J.).

In <u>Polaroid</u>, the defendant's motion to dismiss was granted because the <u>only</u> commercial contact the defendant had with the forum, in addition to demand letters, was an advertisement in a national trade publication. <u>Id.</u> (citations omitted). Here, however, BST's

6

and BIPCO's contacts in addition to the threatening letters -- at least two agreements (between BroadVoice and BST), numerous e-mail communications and weekly telephone calls (between BroadVoice and BST), as well as regular and widespread intellectual property exploitation -- are far more substantial and more purposeful than the one national trade advertisement identified in Polaroid. Indeed, the contacts by BST and BIPCO are more significant than those found sufficient -- one threatening letter and one contractual relationship -- in GSI Lumonics. See id. at 106.

Finally, Defendants make a desperate effort to avoid personal jurisdiction by arguing that a provision in one of the parties' contracts should be considered a factor weighing against personal jurisdiction here in Massachusetts. Specifically, Defendants cite a choice of law/choice of forum clause in one of the parties' agreements, but the provision they identify is limited, expressly, to "legal proceedings for injunctive relief or in support of arbitration involving this Agreement." See Berry Aff., Ex. C (emphasis added). As Defendants well know, the action pending in this Court is a trademark dispute, not an action for breach of contract or otherwise "involving [the parties'] Agreement."

Moreover, as Defendants acknowledge, there is already a separate, pending arbitration concerning disputes over the parties' Agreement. The Defendants have argued that the arbitration should be held in Georgia, but BroadVoice has disagreed, and the issue of arbitration locale has not yet been decided by the American Arbitration Association. In any event, none of this informs the personal jurisdiction analysis pending before the Court, which should and will be decided based on Defendants' contacts with the Commonwealth.

### III.   This Action Should Not be Transferred to Georgia

In arguing that this case should be transferred to Georgia, Defendants have again misstated the law of this Circuit. The Defendants state that first-filed declaratory judgments are not accorded the same deference as a first-filed direct action. The general rule, however, is that where two identical actions exist, the first-filed action is given priority. See Cianbro Corp. v. Curran-LaVoie, Inc., 814 F.2d 7 (1st Cir. 1987). An exception to this rule exists where "it would be inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources." Davox Corporation v. Digital Systems International, Inc., 846 F. Supp. 144, 148 (D. Mass. 1993).

This case does not fit within the exception illustrated in Davox. In Davox, this Court dismissed the first-filed declaratory judgment because while the defendant tried to avoid litigation by inviting discussion, the plaintiff raced to the courthouse. Id. Here, this Court need only look to the procedural history and holding of GSI Lumonics in determining that BroadVoice's first-filed declaratory judgment action should be given priority. As in GSI Lumonics, the Defendants' initial communications to BroadVoice were not invitations for discussion in an attempt to avoid litigation, but instead were letters threatening litigation.

Defendants also erroneously state that the parties have no choice but to arbitrate the Trial Agreement in Georgia. As stated previously, the Trial Agreement is unrelated to any dispute over the use of the "no bell" image. Additionally, BroadVoice disagrees that the appropriate venue for arbitration is Georgia, as evidenced by BroadVoice's objection to locale currently pending in front of the American Arbitration Association.

Finally, the Defendants falsely claim that BroadVoice does not contest that the remaining factors weigh in favor of transfer to Georgia. In its Opposition, BroadVoice explicitly argues that litigating in Georgia is extremely inconvenient to BroadVoice due to the relative size of BroadVoice compared to that of the BellSouth empire.

        Respectfully submitted,
        **BROADVOICE, INC.**

        By its attorneys,

December 2, 2005

/s/ Robert N. Feldman
BIRNBAUM & GODKIN, LLP
Robert N. Feldman (BBO # 630734)
280 Summer Street
Boston, MA  02210
Tel: 617-307-6100
Fax: 617-307-6101

BOSTON LAW GROUP, LLP
Sean C. Ploen (BBO # 641279)
20 Park Plaza, Suite 637
Boston, Massachusetts 02116
(617) 426-6800

### CERTIFICATE OF SERVICE

I, Robert N. Feldman, hereby certify that a true and correct copy of the foregoing document was delivered to all counsel of record on December 2, 2005, by electronic means.

/s/ Robert N. Feldman
Robert N. Feldman