UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **BROADVOICE, INC.**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. **05-11435-NG** |
| | ) |
| **BELLSOUTH CORP., BELLSOUTH TELECOMMUNICATIONS, INC., and BELLSOUTH INTELLECTUAL PROPERTY CORP.**, | ) ) ) ) |
| | ) |
| Defendants. | ) |

### THE BELLSOUTH DEFENDANTS' OPPOSITION TO PLAINTIFF BROADVOICE, INC.'S MOTION FOR RECONSIDERATION

**I.   INTRODUCTION.**

On December 21, 2005, this Court properly determined that this case should be dismissed based on a contractual forum selection clause designating Georgia and an identical, co-pending action in the Northern District of Georgia.[1]  In a belated attempt to revive its case in this Court, Plaintiff BroadVoice, Inc. ("BroadVoice") attempts to manufacture alleged "errors of fact" and ignores the Georgia Action to assert that it has been denied a remedy.  More than two months after the Court dismissed this case, BroadVoice moved for reconsideration.

---

[1]   The case proceeding in the United States District Court for the Northern District of Georgia is styled as *BellSouth Intellectual Property Corp. and BellSouth Telecommunications, Inc. v. BroadVoice, Inc.*, Civil Action No. 1:05-CV-2303 (the "Georgia Action").

1

Defendants BellSouth Corporation ("BSC"), BellSouth Telecommunications, Inc. ("BST") and BellSouth Intellectual Property Corporation ("BIPCO") (collectively referred to as the "BellSouth Defendants") oppose the motion for reconsideration. BroadVoice had a full and fair opportunity to present its arguments and the Court properly rejected them. BroadVoice offers no new evidence, raises no new issue, and its allegations of factual errors fail entirely to meet the standards for relief on a motion for reconsideration. BroadVoice's motion for reconsideration wastes the time and resources of both the Court and the parties, and should be denied.

## II.     BACKGROUND.

BroadVoice's cursory Background statement omits key facts.

### A.     The Georgia Action Is Proceeding.

BST and BIPCO filed the Georgia Action on September 22, 2005. BroadVoice moved to dismiss that case, contending it was "identical" to this Massachusetts action. For example, in its motion to dismiss the Georgia Action, BroadVoice stated that it was moving to dismiss in view of "a prior pending action involving the parties and the same underlying trademark dispute in the United States District Court for the District of Massachusetts." *See* Civ. Action. No. 1:05-CV-2303, Docket No. 4, BroadVoice Motion to Dismiss, p. 2. As a further example, in its Brief in Support of its Motion to Dismiss, BroadVoice argued that "[t]he subject matter of the [Georgia] action by BIPCO and BST is identical to the subject matter of the previously-filed Massachusetts action." *See* Civ. Action. No. 1:05-CV-2303, Docket No. 4, BroadVoice Memorandum in Support, p. 2. On December 14, 2005, the United States District Court for the Northern District of Georgia denied BroadVoice's motion to dismiss. For the past three months, the Georgia Action has

proceeded accordingly. BroadVoice has answered (without seeking to add BSC), the parties have filed a planning report, the Georgia court has entered a scheduling order, and BIPCO and BST have served discovery on BroadVoice.

### B. In Accordance With The Forum Selection Clause, The Arbitration Is Proceeding In Georgia.

The parties are also involved in an arbitration directed to the contract between BST and BroadVoice (the "Trial Agreement"). Prior to this Court's December 21, 2005 Order, the parties were awaiting a ruling from the American Arbitration Association ("AAA") on BroadVoice's challenge to Georgia as the venue of the proceeding. In that challenge, BroadVoice contended (as it does here) that the forum selection clause was limited to two forms of dispute—injunctive relief and proceedings in support of arbitration. On December 12, 2005, the AAA denied BroadVoice's challenge, and the arbitration is proceeding in Georgia. The parties have appeared telephonically before the Arbitrator, a schedule has been determined that sets a hearing date, and BST has served discovery.

### C. The BellSouth Defendants Moved To Dismiss The Massachusetts Action In Its Entirety.

Finally, BroadVoice's motion for reconsideration fails to fully describe the motion made to this Court and the resulting Order. The BellSouth Defendants cited the forum selection clause not only as BroadVoice's jurisdictional concession, but also as a primary basis upon which the entire case should be dismissed as to all the BellSouth Defendants.[2] The forum selection clause evidences a clear intent to litigate disputes related to the Trial Agreement in Georgia under Georgia law. The Trial Agreement constitutes a

---

[2] The BellSouth Defendants filed a motion to dismiss this case primarily on the ground that they do not have sufficient minimum contacts with Massachusetts to support the exercise of personal jurisdiction over them in regards to BroadVoice's declaratory judgment claims.

3

promise by BroadVoice not to use any BIPCO mark. *See* Trial Agreement, ¶ 20.1. BroadVoice's misuse of the famous Bell Logo as a BroadVoice advertising image is contrary to that promise. Thus, the trademark claims in this case are related to the Trial Agreement and the forum selection clause constituted a basis for dismissal of the instant action as to all the BellSouth Defendants.

Moreover, by its December 21, 2005 Order, the Court dismissed this case as to *all* the BellSouth Defendants. BroadVoice effectively conceded that dismissal was proper as to all defendants by arguing that the Georgia Action and the Massachusetts action involved the same claims and the same parties and had "identical" subject matter.[3] BroadVoice's post-dismissal suggestion that this Court's December 21, 2005 Order leaves unresolved the status of BSC and BIPCO is at best contradictory (to BroadVoice's arguments), and at worst, disingenuous.

### D. There Were No "Mistakes" In This Court's Order.

BroadVoice's contention that this Court's December 21, 2005 Order contains mistakes is incorrect. This Court did not find, and did not need to find, that BSC was a party to the Trial Agreement. Rather, this Court correctly and necessarily found that the forum selection clause in the Trial Agreement between BST and BroadVoice evidences the intent of the parties to litigate disputes in Georgia under Georgia law. (As discussed more fully below, BroadVoice cannot avoid the enforcement of the forum section clause with artful pleadings.) Moreover, this Court's Order does not assume that BSC is a party to the Georgia Action. Rather, the Court's Order recognizes that all disputes between these parties will be

---

[3] *See also* BroadVoice's Memorandum In Opposition to Defendants' Motion to Dismiss, or Transfer, or Stay, Docket No. 19, pp. 7, 14, 15, for representations to this Court that the two actions raised essentially the same set of claims and were "highly similar."

4

resolved in the "identical" co-pending case in Georgia. There were no mistakes in this Court's Order and, to the extent BroadVoice contends otherwise, they were inconsequential.[4]

**III.   ARGUMENT.**

    **A.   BroadVoice Failed To Meet The Standards Governing Motions For Reconsideration.**

The First Circuit has made it abundantly clear that relief under Rule 60(b) of the Federal Rules of Civil Procedure "is extraordinary in nature" and should be granted "sparingly." *Cintron-Lorenzo v. Departmento De Asuntos Del Consumidor*, 312 F.3d 522, 527 (1st Cir. 2002) (affirming dismissal and denial of plaintiff's motion for reconsideration); *see also Davila-Alvarez v. Escuela De Medicina Universidad Central Del Caribe*, 257 F.3d 58, 63–64 (1st Cir. 2001) ("Although many courts have indicated that Rule 60(b) motions should be granted liberally, this Circuit has taken a harsher tack.") At a "bare minimum," a party seeking a motion for reconsideration must prove that: (1) exceptional circumstances exist, favoring extraordinary relief; (2) if the judgment is set aside, the moving party will mount a potentially meritorious claim or defense; and (3) no unfair prejudice will accrue to the opposing parties should the motion be granted. *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002) (affirming denial of request for reconsideration).

BroadVoice has failed to meet any of these minimum requirements. First, exceptional circumstances do <u>not</u> exist in this case. BroadVoice's conclusory assertion that "this situation is both highly unusual and deeply harmful to BroadVoice," *see* BroadVoice's Memorandum in Support, Docket No. 28, p. 7–8, falls far short of the high standard for

---

[4] For example, the Court's reference to "BellSouth Corp." in the December 21, 2005 Order is of no moment, as there is no dispute that the Trial Agreement was executed by BST and BroadVoice.

evidentiary proof of exceptional circumstances. *Paul Revere Variable Annuity Insurance Co. v. Zang*, 248 F.3d 1, 5–7 (1st Cir. 2001) (finding the defendants did not present sufficient evidence to overcome the high bar for exceptional circumstances). There is nothing exceptional in requiring BroadVoice to litigate this dispute with BST and BIPCO in Georgia based on the forum selection clause it entered into with BST.

Second, this Court correctly held that this dispute should proceed in Georgia and BroadVoice fails to assert a sufficient basis for disturbing this Court's Order. As this Court noted in its Order, "a motion to dismiss based upon a forum selection clause is treated as one alleging a failure to state a claim for which relief can be granted under Rule 12(b)(6)." *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 387 (1st Cir. 2001). This Court's December 21, 2005 Order was in keeping with the Supreme Court's directive to encourage commercial reliance on forum selection clauses. *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13–15 (1972). BroadVoice cannot prevent proper enforcement of the forum selection clause by claiming that its declaratory judgment claim is for non-injunctive relief. *See Doe v. Seacamp Assoc., Inc.*, 276 F. Supp. 222, 228 (D. Mass. 2003) (explaining that forum selection clauses are to be enforced as a matter of public policy and such enforcement is not to be defeated by "artful pleadings").

BroadVoice argues that BSC was not a party to the Trial Agreement and, therefore, BSC should not be permitted to rely on the forum selection clause. BroadVoice is wrong. The fact that BSC was not a party to the Trial Agreement is of no consequence for jurisdictional purposes because BSC is the parent of and in privity with BST. It was readily foreseeable that BSC, to any extent it may be involved in the dispute, would be able to enforce the forum selection clause. *Hugel v. Corp. of Lloyd's*, 999 F2d 206, 209 (7th Cir.

6

1993). BSC is within the range of "participants, parties and non-parties, [that] should benefit from and be subject to" the forum selection clause in the Trial Agreement. *See Banco Popular De Puerto Rico v. Airborne Group PLC,* 882 F. Supp. 1212, 1216 (D.P.R. 1995) (finding forum selection clause can be invoked by all defendants); *see also Clinton v. Janger,* 583 F. Supp. 284, 290 (N.D. Ill. 1984) (finding forum selection clause enforceable by non-party of disputed contract). Accordingly, BroadVoice should not be permitted to undermine this Court's Order or the intent of the parties to litigate all disputes in Georgia, especially when the Georgia Action is well underway.

Finally, BroadVoice's argument that there "has been no reliance upon the [Massachusetts] Court's decision and no subsequent substantive actions have been taken" in the Georgia Action is a misstatement. *Id.* at p. 8. There have been significant substantive actions taken in Georgia. On November 7, 2005, the parties filed a Joint Preliminary Report and Discovery Plan. *See* Civil Action No. 1:05-CV-2303, Docket No. 7. On November 10, 2005, the Georgia Court issued a Scheduling Order. *See* Civil Action No. 1:05-CV-2303, Docket No. 9. BIPCO served interrogatories and document requests before BroadVoice filed the instant motion for reconsideration. BST and BIPCO have relied upon the finality of this Court's judgment, which was issued more than two months prior to the filing of BroadVoice's motion for reconsideration, and would be severely prejudiced if BroadVoice's motion for reconsideration were granted. *See Davila-Alvarez*, 257 F.3d at 64 ("The rule must be applied so as to 'recognize the desirability of deciding disputes on their merits,' while also considering 'the importance of the finality as applied to court judgments.'") (quoting *Teamsters, Chauffeurs Warehousemen & Helpers Union, Local No. 59 v. Superline*

*Transp. Co.*, 953 F.2d 17, 19–20 (1st Cir. 1992)) (emphasis added). BroadVoice has failed to meet any of the three minimum requirements for relief on a motion for reconsideration.

Additionally, neither subsection of Rule 60 pled by BroadVoice is an appropriate ground for BroadVoice's motion. Under Rule 60(b)(1), the Court may relieve a party from a final judgment upon the finding of "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(1) does <u>not</u> apply to alleged interpretive errors made by the Court. *In re Grand Jury Proceedings*, No. 85-206, 1988 WL 53394, at *3 (D. Mass. 1988) (denying motion for reconsideration). The proper procedure for addressing such concerns is an appeal. *Id.* Indeed, interpreting the term "mistake" in Rule 60(b)(1) to include any type of judicial error would pervert the rule. *See Silk v. Sandoval*, 435 F.2d 1266, 1267–68 (1st Cir. 1971) (affirming dismissal).[5] BroadVoice had the opportunity to appeal this Court's Order two months ago and Rule 60(b)(1) is not the proper procedure for addressing BroadVoice's concerns.

Relief under Rule 60(b)(6) is available only when subsections 1 through 5 of Rule 60 do not apply. *Capizzi v. State Res. Corp.*, No. 02-12319, 2005 WL 113679, at *7 (D. Mass. 2005) (denying motion for reconsideration under Rule 60(b)(1), (3), and (6)). To justify relief under Rule 60(b)(6), BroadVoice must prove "extraordinary circumstances" warrant relief. *Davila-Alvarez*, 257 F.3d at 58. BroadVoice has failed to assert <u>any</u> circumstance that come close to overcoming this high burden and should not be allowed to

---

[5] The First Circuit has found that Rule 60(b) may be proper grounds to seek relief in the <u>rare</u> instances of a "void" judgment. *Lubben* v. *Selective Service Sys. Local Bd.*, 453 F.2d 645, 649 (1st Cir. 1972). The definition of a "void" judgment is to be narrowly construed and is only relevant when a judgment, "from its inception, was a complete nullity without legal effect." *Id.* Most importantly, this Court's December 21, 2005 Order could not possibly have been void because "a court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void." *Id.*

circumvent the appeal process because of its delay in seeking relief. "The residual clause [Rule 60(b)(6)], like Rule 60(b) generally, is not a substitute for an appeal." *Lubben*, 453 F.2d at 651 (reversing district court's grant of motion to vacate). BroadVoice has failed to meet the requirements for relief under both Rule 60(b)(1) and (6). Nevertheless, BroadVoice also fails to allege a sufficient substantive basis to disturb this Court's Order.

      **B.**    **Complete And Full Relief Is Available To BroadVoice In The Georgia Action.**

Complete and full relief is available to BroadVoice in the Georgia Action through the adjudication of BST and BIPCO's claims for infringement, dilution, and unfair competition against BroadVoice. BSC's absence from the Georgia Action does not justify reconsideration of this Court's December 21, 2005 Order for four reasons: (1) BSC does not, and cannot, have any claims against BroadVoice relating to BroadVoice's misuse of the BELL Logo; (2) BroadVoice has offered no reason to avoid the corporate separateness of BSC; (3) if BroadVoice were granted relief on its claims, BSC would be bound by any declaration of noninfringment (or otherwise) against BST and BIPCO; and (4) while not necessary, BroadVoice could have sought to join BSC in the Georgia Action, but failed to do so within the time parameters set by the Court.

      **1.**    **BSC does not have any claims against BroadVoice arising from BroadVoice's misuse of the BELL Logo.**

BSC is not the owner of the BELL Logo[6] and, therefore, not necessary to this dispute. It is black-letter law that the trademark owner is a necessary party to a trademark infringement action. *See Jaguar Cars Ltd. v. Mfr. Des Montres Jaguar*, 196 F.R.D. 306, 309

---

[6] BSC uses the famous Bell Logo as a result of a license from BIPCO, the owner of the trademark.

(E.D. Mich. 2000) (finding owner of registered mark to be necessary party); *Lisseveld v. Marcus*, 173 F.R.D. 689, 694 (M.D. Fla. 1997) (finding registered owner of trademark a necessary party); *JTG of Nashville, Inc. v. Rhythm Band, Inc.*, 693 F. Supp. 623, 626 (M.D. Tenn. 1988) (explaining that owner of allegedly infringed intellectual property rights is a person needed for a just adjudication). Thus, BIPCO, the owner of the BELL Logo, is a necessary party for complete relief in this dispute. Likewise, as a licensee in direct competition with BroadVoice, BST is also a proper party to the Georgia Action. *See Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 160 (1st Cir. 2001) (finding that "one who may suffer adverse consequences from a violation of section 1125(a) has standing to sue regardless of whether he is the registrant of a trademark"). There is no case or controversy between BSC and BroadVoice. BSC neither owns the BELL Logo nor competes with BroadVoice. Accordingly, full and complete relief is available to BroadVoice in the Georgia Action because BST and BIPCO are parties to that action and BSC is in privity with those BellSouth parties.

### 2. BroadVoice has offered no reason for this Court to disregard the corporate separateness of BSC.

BSC should not be dragged into this dispute merely because it is the parent corporation to the real parties in interest, BST and BIPCO. The presumption of corporate separateness may only be overcome by "clear evidence" that the parent in fact controls the activities of the subsidiary. *See United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1091 (1st Cir. 1991). BroadVoice argues that this Court should ignore the corporate separateness of BSC because the BSC website states that BellSouth trademarks shall not be used without the permission of BellSouth and defines

"BellSouth" to include all BellSouth affiliates. BroadVoice apparently failed to scroll down to Paragraph 14 on the same website, which states that BIPCO is the owner of the BellSouth trademarks:

> The BellSouth name, the BellSouth logo, BellSouth slogans and other BellSouth logos and product and service names are trademarks of BellSouth Intellectual Property Corporation (the "BellSouth Marks").

A true and correct copy of this website is attached as **Exhibit A**. BroadVoice has offered no evidence, let alone the "clear evidence" necessary to overcome the corporate separateness of BSC. *See Topp v. Compair Inc.*, 814 F.2d 830, 835–37 (1st Cir. 1987) (holding that plaintiff failed to assert sufficient evidence to ignore the corporate separateness of defendant and its subsidiaries).

### 3. BSC would be bound by any declaration against BST or BSC in the Georgia Action.

If BroadVoice prevails in the Georgia Action, BSC would be bound by such a ruling against BST and BIPCO. *See S.S. Kresege Co. v. Winget Kickernick Co.*, 96 F.2d 978, 988 (8th Cir. 1938) (explaining that a finding of non-infringement will apply to non-parties that are in privity with the parties in that action); *see generally* Rule 56. Thus, BroadVoice is in no way prejudiced by BSC's absence in the Georgia Action.

### 4. BroadVoice Could Have Sought to Join BSC in the Georgia Action.

BroadVoice could have sought to join BSC in the Georgia action. The deadline to join parties without leave of court was January 14, 2006.[7] BroadVoice's failure

---

[7] In the Joint Preliminary Report and Discovery Report filed in the Georgia Action, BroadVoice reserved the right to file amendments to the pleadings up to thirty (30) days after Judge Story's ruling on BroadVoice's Motion to Dismiss, or in the Alternative, to Stay. *See* 1:05-CV-2303, Docket No. 7. In his December 14, 2005 Order, Judge Story denied

11

to seek to add BSC to the Georgia Action is not a basis for reconsideration of this Court's correct December 21, 2005 Order. *See Davila*, 257 F.3d at 67 (finding relief under Rule 60(b) was not appropriate where the plaintiffs were "far from faultless" in their conduct). BroadVoice should not be permitted to intentionally fail to seek to add BSC in Georgia and then successfully claim that BSC's absence in Georgia is a bases for reviving its case in Massachusetts.

**IV.   CONCLUSION.**

BroadVoice's belated attempt to disturb this Court's well-founded December 21, 2005 Order should be denied. This Court properly identified and relied on the forum selection clause to dismiss this case as to all of the BellSouth Defendants. BroadVoice has failed to meet the minimum requirements necessary for relief on a motion for reconsideration. More fundamentally, BroadVoice has available full and complete relief in the Georgia Action, the jurisdiction where it agreed to litigate. BroadVoice's motion for reconsideration should be denied.

---

BroadVoice's motion. *See* 1:05-CV-2303, Docket No. 10. The thirty (30) day reservation period has expired.

.                                                    Respectfully Submitted,

BELLSOUTH CORP., BELLSOUTH
TELECOMMUNICATIONS, INC., and
BELLSOUTH INTELLECTUAL PROPERTY
CORP.,.

By their attorneys,

Dated: March 16, 2006                    /s/ Benjamin A. Goldberger
                                         Edward P. Leibensperger (BBO# 292620)
                                         Benjamin A. Goldberger (BBO# 654357)
                                         McDermott Will & Emery LLP
                                         28 State Street
                                         Boston, Massachusetts  02109-1775
                                         (617) 535-4000

OF COUNSEL:
Stephen M. Schaetzel
Georgia Bar No. 628653
Alicia Grahn Jones
Georgia Bar No. 141415
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309
(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)

Kendall Butterworth
Georgia Bar No. 100005
BellSouth Corporation
1155 Peachtree Street, Suite 1700
Atlanta, GA  30309
(404) 249-3388 (telephone)
(404) 249-2118 (facsimile)

## CERTIFICATE OF SERVICE

   I hereby certify that this document filed through the ECF system and all attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 16, 2006.

                                         /s/ Benjamin A. Goldberger
                                         Benjamin A. Goldberger



YELLOWPAGES.COM™ | Special Needs | En Español | Wholesale | Careers | Contact Us

enter search criteria here   » search



Home > Legal Information > Terms of Use of BellSouth Web Site(s)

# Terms of Use of BellSouth Web Site(s)

1. DESCRIPTION OF OUR SITE

   Welcome to BellSouth. We provide users with access to a collection of on-line resources, which may include general and personalized content, communication tools, online directories, administrative services, purchasing services, download areas, games and information (all of which, together with this and other BellSouth Web sites through which they may be accessed or delivered, are collectively called our "Site"). We do this both through our Site and by linking to Web sites of companies with which we work as well as by linking to other sites we think may be useful to you or your business. Such sites may have their own terms of use or applicable policies. BellSouth has also contracted with certain third party suppliers to enable BellSouth to provide our Site to you. The term "BellSouth" (or "we", "our" and "us") includes all of the subsidiaries and affiliates of BellSouth Corporation, as well as their successors and assigns.

2. ACCEPTANCE OF TERMS

   BellSouth provides our Site to you subject to these Terms of Use ("Terms"). **By using our Site in any way you are agreeing to comply with these Terms, which we may update from time to time without notice.** All amended Terms shall automatically be effective when they are initially posted on our Site. Your continued use of our Site after any changes in these Terms shall constitute your consent to such changes. Certain services available through our Site, especially services for which you are asked to subscribe or pay money, may have their own additional terms and conditions that will apply to your purchase or use of that particular service and which will control in the event of any conflict with these Terms. These Terms govern the use of our Site by viewers and other users (visitors); if we have entered into a separate contract with a party for the insertion or other placement of content, advertising or other materials on any of our Sites (including but not limited to Yellow Pages listings), then the terms of such separate agreements will govern our relationship with such parties.

3. REGISTRATION, PASSWORD AND SECURITY

   Whenever you provide us information on our Site, you agree to: (a) provide true, accurate, current and complete information and (b) maintain and promptly update such information to keep it true, accurate, current and complete. If you provide any information that is, or we have reasonable grounds to suspect that the information is, untrue, inaccurate, not current or incomplete, BellSouth or its third party suppliers may suspend or terminate your access to our Site and refuse any and all current or future use of our Site (or any portion thereof).

If any portion of our Site requires you to register or open an account you may also be asked to choose a password and a user name. Please select a password that would not be obvious to someone trying to guess your password, and change it regularly as an added precaution. You are responsible for maintaining the confidentiality of the password and account, and you are fully responsible for all activities that occur under your password or account identification. You agree to immediately notify BellSouth of any unauthorized use of your password or account or any other breach of security. BellSouth will not be liable for any loss or damage that you may incur as a result of someone else using your password or account, either with or without your knowledge. You may not use anyone else's account at any time, without the permission of the account holder.

BellSouth intends to take certain industry-accepted precautions from time to time to secure our Site or portions thereof, and some portions of the Site may be labeled as "secure" in accordance with industry practice in connection with the use of such precautions. However, you understand and agree that such precautions do not guarantee that use of the Site is invulnerable to all security breaches, and that BellSouth makes no warranty, guarantee, or representation that use of our Site is protected from all viruses, security threats or other vulnerabilities.

4. PRIVACY POLICY; USE BY CHILDREN

   Our Site is intended for use primarily by persons 18 years or older. We do not intentionally collect any personal, individually identifying information from children under the age of 13. Please view our comprehensive Privacy Policy relating to the collection and use of your information through or in connection with our Site. When you enter into transactions with or provide information to other companies providing content or services in connection with our Site, you will be subject to their privacy policies rather than ours.

5. CONTENT AND RELATED USER CONDUCT

   You understand that you are responsible for any content that you post or transmit on or through our Site.

   You agree to use our Site in a manner consistent with all applicable laws and regulations. Specifically, you will not use our Site to distribute, link to, or solicit content that:
   - is harmful to minors, threatening, harassing, abusive, defamatory, vulgar, gratuitously violent, obscene, pornographic, libelous, invasive of another's privacy, or racially, ethnically or otherwise offensive;
   - infringes someone else's intellectual property or other rights;
   - advocates or solicits violence or criminal conduct;
   - specifically advertises firearms or ammunition, tobacco, alcohol, illegal drugs, or other contraband;
   - constitutes unsolicited or unauthorized advertising, junk or bulk e-mail, chain letters, or any other unsolicited commercial communication;
   - contains software viruses or any other computer code, files, or programs that are designed or intended to disrupt, damage, or limit the functioning of any software, hardware, or communications systems or equipment.

   BellSouth does not generally pre-screen or control the content posted via our

Site by third parties, and, therefore, does not guarantee the accuracy, integrity or quality of such content. BellSouth will not be liable in any way for any errors or omissions in any content, or for any loss or damage of any kind incurred as a result of the use of any content posted or contained in e-mails or otherwise transmitted or displayed via our Site.

BellSouth shall have the right (but not the obligation) in its sole discretion to monitor, refuse or remove any content that is available via our Site. Without limiting the foregoing, BellSouth shall have the right to remove any content that violates these Terms or is otherwise objectionable.

6. BELLSOUTH DISCRETION OVER USE, STORAGE, AND OPERATION OF OUR SITE

BellSouth may set limits regarding our Site and the use of any features or services associated with our Site, including (where applicable) limits on the duration or amount of storage of postings, e-mail and other user-provided content, or the number or size of messages to or from a user. We are not liable for the deletion, garbling or loss of messages, other communications, or other content maintained or transmitted by our Site.

We may change or terminate our Site or any part of it without notice or liability. We may terminate or change your password, account, or use of all or any part of our Site and may remove any content from our Site without notice and for any reason, including lack of use or violation of these Terms. We reserve the right to log off accounts that are inactive for an extended period of time.

7. CONTENT PUBLICLY POSTED OR SUBMITTED TO BELLSOUTH

Our Site may have "publicly accessible areas" such as message boards, forums, member profiles, yellow pages, job folders or other features that allow users to post information that will be accessible by the public or the user population generally. With respect to all content you elect to post to such publicly accessible areas of our Site, while you retain any and all rights that may exist in such content, you grant BellSouth the royalty-free, perpetual, irrevocable, non-exclusive and fully sublicensable right and license to use, reproduce, modify, adapt, publish, translate, create derivative works from, distribute, perform and display such content (in whole or part) worldwide and/or to incorporate it in other works in any form, media, or technology now known or later developed and to exercise the same rights with respect to such works. You also permit any user of our Site to access, display, view, store and reproduce content that you have placed in publicly accessible areas of our Site. Any content you post to publicly accessible areas is not subject to our Privacy Policy.

Except for any personal, individually identifying information which we agree to keep confidential as provided in our Privacy Policy, any feedback, data, answers, questions, comments, suggestions, ideas or the like that you send to us will be treated as being non-confidential and nonproprietary, and not subject to our Privacy Policy. We assume no obligation to protect such information from disclosure and will be free to reproduce, use, and distribute the information to others without restriction. We will also be free to use any ideas, concepts, know-how or techniques contained in information that you send us for any purpose whatsoever including but not limited to developing, manufacturing and marketing products and services incorporating such information.

information.

8. INDEMNITY

   You agree to indemnify and hold BellSouth and its underlying content and service providers, and each of their respective subsidiaries, affiliates, officers, agents, and employees, harmless from any claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of content you submit, post or upload to or transmit through our Site, your use of our Site, your connection to our Site, your violation of these Terms, or your violation of any rights of another. These obligations will survive any termination of your relationship with BellSouth or your use of our Site. BellSouth reserves the right to assume the defense and control of any matter subject to indemnification by you, in which event you will cooperate with BellSouth in asserting any available defenses.

9. SPECIAL LIMITATIONS ON USE OF OUR SITE

   We grant to you a limited, non-exclusive, non-transferable, revocable license to use our Site only for the intended purposes of our Site. You may not sell, resell, or otherwise use or commercially exploit our Site other than by using it for its intended purposes. Systematic retrieval of data or other content from our Site to create or compile, directly or indirectly, a collection, compilation, database or directory without written permission from BellSouth is prohibited. You further agree not to reproduce, prepare derivative works from or otherwise commercially exploit any portion of our Site, for any purposes other than its intended purposes or other than as expressly permitted by these Terms.

   You may not modify, translate, decompile, disassemble, reverse engineer or otherwise attempt to derive the source code for the computer systems and other technology that operate our Site or create derivative works based on our Site. For purposes of these Terms, "reverse engineering" shall include the examination or analysis of the Site to determine the source code, structure, organization, internal design, algorithms or encryption devices of our Site's underlying technology.

   Any license granted to you under these Terms for the use of any portion of our Site requiring registration or an account will automatically terminate upon termination of your account or registration privileges with respect to such portion of our Site. BellSouth and its third party suppliers have the right to terminate the license of any user at any time for any or no reason, solely in the discretion of BellSouth and its third party suppliers.

   BellSouth provides our Site for use only by persons located within the United States and provides certain regulated telecommunications and other services only in certain portions of the United States. BellSouth makes no representation that materials or services described on our Site are appropriate or available for use in locations outside the United States or our applicable serving territories within the United States, and accessing them from territories where their contents are illegal is prohibited. Those who choose to access our Site from other locations do so on their own initiative and are responsible for compliance with local laws. Certain BellSouth affiliated companies provide services and operate websites in various other countries throughout the world, some of which websites may be linked to from our Site. Any such International websites will be governed by their own terms of use and privacy policies and not by these Terms.

10. DEALINGS WITH ADVERTISERS AND SERVICE PROVIDERS; LINKS

    Our Site may provide links to or information about other Web sites or resources. Your correspondence or business dealings with, or participation in promotions of, advertisers or service providers found on or through our Site, including payment and delivery of related goods or services, and any other terms, conditions, warranties or representations associated with such dealings, are solely between you and such advertisers or service providers. You assume all risks arising out of or resulting from your transaction of business over the Internet, and you agree that BellSouth shall not be responsible or liable for any loss or damage of any sort incurred as the result of any such dealings or as the result of the presence of information about or links to such advertisers or service providers on our Site. You acknowledge and agree that BellSouth is not responsible or liable for the availability, accuracy, copyright compliance, legality, decency, or any other aspect of the content, advertising, products, services or other materials on or available from such sites or resources. Advertisements found on or through our Site, and references that we make to any names, marks, products or services of third parties or hypertext links to third party sites or information, do not constitute or imply our endorsement, sponsorship or recommendation of the third party, information, product or service. You acknowledge that your use of these linked sites is subject to different terms of use than these Terms, and may be subject to different privacy practices than those set forth in the Privacy Policy governing our Site.

11. DISCLAIMER OF WARRANTIES

    **YOU EXPRESSLY UNDERSTAND AND AGREE THAT:**

    **A. YOUR USE OF OUR SITE IS AT YOUR SOLE RISK. OUR SITE IS PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS. BELLSOUTH EXPRESSLY DISCLAIMS ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, ACCURACY OF DATA AND NON-INFRINGEMENT. BECAUSE SOME JURISDICTIONS MAY NOT PERMIT THE EXCLUSION OF CERTAIN WARRANTIES, SOME OF THESE EXCLUSIONS MAY NOT APPLY TO YOU.**

    **B. BELLSOUTH MAKES NO WARRANTY THAT (i) OUR SITE WILL MEET YOUR REQUIREMENTS, (ii) OUR SITE WILL BE UNINTERRUPTED, TIMELY, SECURE, OR ERROR-FREE, (iii) THE RESULTS THAT MAY BE OBTAINED FROM THE USE OF OUR SITE WILL BE ACCURATE OR RELIABLE, (iv) THE QUALITY OF ANY PRODUCTS, SERVICES, INFORMATION, OR OTHER MATERIAL PURCHASED OR OBTAINED BY YOU THROUGH OUR SITE WILL MEET YOUR EXPECTATIONS, AND (v) ANY ERRORS IN THE SITE WILL BE CORRECTED.**

    **C. ANY MATERIAL DOWNLOADED, UPLOADED OR OTHERWISE OBTAINED THROUGH THE USE OF OUR SITE IS DONE AT YOUR OWN DISCRETION AND RISK AND YOU WILL BE SOLELY RESPONSIBLE FOR ANY DAMAGE TO YOUR COMPUTER SYSTEM OR BUSINESS OR LOSS OF DATA THAT RESULTS FROM THE DOWNLOAD OR UPLOAD OF ANY SUCH MATERIAL OR THE USE OF OUR SITE.**

**D. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM BELLSOUTH OR THROUGH OR FROM OUR SITE SHALL CREATE ANY WARRANTY. ADVICE OR INFORMATION RECEIVED VIA OUR SITE SHOULD NOT BE RELIED UPON FOR SIGNIFICANT PERSONAL, BUSINESS, MEDICAL, LEGAL OR FINANCIAL DECISIONS AND YOU SHOULD CONSULT AN APPROPRIATE PROFESSIONAL FOR SPECIFIC ADVICE TAILORED TO YOUR PARTICULAR SITUATION.**

**E. MATERIAL ON OUR SITE MAY INCLUDE TECHNICAL INACCURACIES OR TYPOGRAPHICAL ERRORS. CHANGES MAY BE PERIODICALLY INCORPORATED INTO THIS MATERIAL. BELLSOUTH MAY MAKE IMPROVEMENTS OR CHANGES IN THE PRODUCTS, SERVICES OR PROGRAMS DESCRIBED IN THESE MATERIALS AT ANY TIME WITHOUT NOTICE.**

12. LIMITATION OF LIABILITY; EXCLUSIVE REMEDY

    **YOU EXPRESSLY UNDERSTAND AND AGREE THAT BELLSOUTH SHALL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, EXEMPLARY OR OTHER DAMAGES (WHETHER OR NOT BELLSOUTH HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), RESULTING FROM: (i) THE USE OR THE INABILITY TO USE OUR SITE; (ii) THE COST OF PROCUREMENT OF SUBSTITUTE GOODS AND SERVICES RESULTING FROM ANY GOODS, DATA, INFORMATION OR SERVICES PURCHASED OR OBTAINED OR MESSAGES RECEIVED OR TRANSACTIONS ENTERED INTO THROUGH OR FROM OUR SITE; (iii) UNAUTHORIZED ACCESS TO OR ALTERATION OF YOUR TRANSMISSIONS OR DATA; (iv) STATEMENTS OR CONDUCT OF ANY THIRD PARTY ON OUR SITE; OR (v) ANY OTHER MATTER RELATING TO OUR SITE. BECAUSE SOME JURISDICTIONS MAY NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, BELLSOUTH 'S LIABILITY IN SUCH JURISDICTIONS SHALL BE LIMITED TO THE MAXIMUM EXTENT PERMITTED BY LAW.**

    **IF YOU ARE DISSATISFIED WITH ANY PORTION OF OUR SITE, OR WITH ANY OF THESE TERMS OF USE, YOUR SOLE AND EXCLUSIVE REMEDY IS TO DISCONTINUE USING OUR SITE.**

13. NOTICE

    Notices to you, including notices of changes to these Terms, may, at BellSouth's discretion, be made either by e-mail, regular mail or by displaying the notices or links to notices on our Site.

14. TRADEMARK, COPYRIGHT INFORMATION

    The BellSouth name, the BellSouth logo, BellSouth slogans and other BellSouth logos and product and service names are trademarks of BellSouth Intellectual Property Corporation (the "BellSouth Marks"). You are not authorized to use any BellSouth name or mark as a hypertext link to any BellSouth Website or in any advertising, publicity or in any other commercial manner without the prior written consent of BellSouth. Registration and/or use of the BellSouth name, or a confusingly similar name, as part or all of a domain name by a third party is strictly prohibited. Requests for

authorization should be made to the BellSouth Intellectual Property Group. You may apply online for trademark use for some limited activities such as Small Sponsorships and Permission to Hypertext Link by accessing BellSouth's "clickwrap" agreements located at http://contact.bellsouth.com/bipman.

You may use, copy and distribute the materials found on BellSouth Websites for internal, noncommercial, informational purposes only. All copies that you make of the material must bear any copyright, trademark or other proprietary notice located on our Site that pertain to the material being copied. Except as authorized in this paragraph, you are not being granted a right, title, interest or license under any copyright, trademark, patent or other intellectual property right in the material or the products, services, processes or technology described therein. All such rights are retained by BellSouth Corporation, its subsidiaries or any third party owner of such rights. All trademarks and service marks contained herein that are not BellSouth Marks are the trademarks of their respective owners.

15. GENERAL

These Terms govern, and constitute the entire agreement between you and BellSouth with respect to, your use of our Site. Additional or different terms and conditions may apply when you use other specific BellSouth services or the services of any third-party suppliers of content, software or services. The laws of the State of Georgia govern this agreement and the relationship between you and BellSouth with respect to our Site. You agree to submit to the personal and exclusive jurisdiction of the state and federal courts located in Fulton County, Georgia for any claim or dispute arising from these Terms or the use of our Site. BellSouth's failure to enforce any right under these Terms will not waive that right. You must file any claim or suit related to our Site within one year after it arises.



Copyright 1995-2006 BellSouth Corp. All Rights Reserved.
Legal Notices | Privacy Policy | Site Map | Feedback